William P. McDANNOLD,
et al., Plaintiffs,

v.

ELECTRO–JET TOOL & MFG.,
et al., Defendants.

No. 1:93cv706.

United States District Court,
S.D. Ohio.

Feb. 8, 1995.

Judith Boyers Gee, Covington, KY, Stephen M. Perry, Casner & Edwards, Boston, MA, for William P. McDannold.

Judith Boyers Gee, Covington, KY, for Robert W. Patten, Jim Stirneman, Steven W. Miller, Rayford Randall, John T. Knuehl, Steven M. Franzen, Dennis P. McCloskey, Glennis Lawson, Paul A. Ross, Nancy L. Mertes, Gary R. Hughes, Paul D. Hansel, Timothy W. Campbell, Beckham W. Fields, Richard L. Farrell, Robert O. Pierce, Steve Mefford, Julie Sunderman, Carl Eric Tarpoff, Anthony R. Stidham, Timothy M. Long, David J. Corsmeier, Lisa L. Stahl, Robert M. Von Bargen, William P. Moorhead, Glen Lievestro, John A. Hendrickson, Donna J. Bush, Carolyn Potzick, Luellen Flinders, Charles D. Campbell, Louis John Zinnecker, Dave J. Bleser, Steven M. Huitger, Robert T. Hardwick, William R. Byrd, Eudene Sewell, Jr., James M. Long, Don Vernon Flint, Charles C. Antoloci, Lee R. Borgemenke, Don Belcher, Tommy Luketich, William J. Byrd, Edward J. Von Bargen, Craig T. Doyle, Donald Fields, Steven E. Horton, Darrin R. Lawson.

Carl John Schmidt, III, Harold George Korbee, Wood & Lamping, Cincinnati, OH, for Electro–Jet Tool & Mfg. Co. Inc.

Robert Alexander Pitcairn, Jr., Katz, Teller, Brant & Hild Co., Cincinnati, OH, for Laura J. Gerding, Paul Weber.

William Hare, pro se.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon Defendant Electro–Jet Tool & Manufacturing Company's ["Electro–Jet"] motion for [partial] summary judgment (Doc. 45), Plaintiffs' memorandum in opposition thereto (Doc. 48), and Defendant Electro–Jet's reply. (Doc. 50).

In addition, the Court will consider Defendant Electro–Jet's motion to dissolve preliminary injunction (Doc. 53), Plaintiff's memo-

randum in opposition thereto (Doc. 56), and Defendant Electro–Jet's reply. (Doc. 58).

### *Procedural History/The Parties' Claims*

On October 12, 1993, Plaintiffs, all participants in Electro–Jet's Employee Stock Ownership Plan and Trust ["ESOP"], filed their original complaint in this action against Defendant Electro–Jet and Defendants William J. Hare, Laura J. Gerding and Paul Weber, who were Electro–Jet board members, corporate officers, ESOP trustees and also the entire ESOP administrative committee. (Doc. 1, ¶¶ 3, 9–12). Plaintiffs alleged that Defendants had failed to comply with various requirements of the Employer Retirement Income Security Act ["ERISA," 29 U.S.C. § 1023, *et seq.*] with respect to the Electro–Jet ESOP, including but not limited to failure to file with the Internal Revenue Service ["the IRS"] and to provide Plaintiffs with copies of required annual reports for the 1990, 1991 and 1992 fiscal years. .(Doc. 1, ¶¶ 36, 46–50,.55–68). Plaintiffs requested injunctive relief, including the removal and replacement of Defendant Hare as an ESOP fiduciary (Doc. 1, ¶ 38), the removal and replacement of Defendants as ESOP administrators (Doc. 1, ¶ 51), and an order compelling Defendants to provide copies of the requisite annual reports and other ESOP information. (Doc. 1, ¶¶ 69, 79, 87). In addition, they requested a monetary award in the form of an ERISA-authorized penalty of up to $100 per day for failure to supply information in accordance with ERISA's provisions, as well as attorney fees and costs. (Doc. 1, ¶¶ 91–106; 109–110).

Plaintiffs simultaneously moved for a preliminary injunction as to the injunctive relief requested in the complaint. (Doc. 2).

On May 13, 1994, Plaintiffs filed an amended motion for preliminary injunction, asking that Defendants be directed to perfect all governmental filings of the required annual reports for the 1990, 1991, 1992 *and* 1993 fiscal years, that Defendants be directed to provide copies of all such documents to Plaintiffs, and that Defendants be directed to provide Plaintiffs with copies of all documents· regarding the resignation of any Defendant from any position of authority as to the Electro–Jet ESOP. (Doc. 21).

On May 25, 1994, following a hearing held on May 16, 1994, Magistrate Judge Jack Sherman, Jr. recommended that the amended motion for injunctive relief be denied as moot as to the request for documentation relating to the resignation of any Defendant, given that such information already had been produced. (Doc. 29). On June 16, 1994, following a further hearing held on June 3, 1994, Magistrate Judge Sherman further recommended that the motion for injunctive relief be granted as to the requests for governmental filings and copies to Plaintiffs of the 1990–93 annual reports, and that Defendants be directed to comply therewith by August 2, 1994. (Doc. 33).

On July 13, 1994, absent any objections thereto, this Court adopted those Reports and Recommendations. (Doc. 36).

On July 29, 1994, Defendants Gerding and Weber moved to extend until November 1, 1994, the time for compliance with the preliminary injunction order. (Doc. 42). The Court granted that motion on August 4, 1994. (Doc. 43).

On September 20, 1994, Defendant Electro–Jet filed the instant motion for partial summary judgment, as to Plaintiff's claim for damages. (Doc. 45). Defendant Electro–Jet argues that it is not an administrator of the subject ESOP, and thus is not liable under ERISA for the monetary damages that Plaintiffs seek.

On October 13, 1994, Plaintiffs filed their memorandum opposing Defendant's summary judgment motion, arguing that Electro–Jet should be held subject to ERISA's monetary damages provision, in that it has held itself out as the ESOP plan administrator, it is the *de facto* acting plan administrator given the administrative committee members' resignations, and it is a co-fiduciary liable for other fiduciaries' breaches of duty. (Doc. 48).

On October 28, 1994, Defendant Electro–Jet filed its summary judgment reply under seal. (Doc. 50). In that document, Defendant notes that it has moved for summary judgment only as to Plaintiffs' damages

claim, not as to the claims for injunctive relief, and argues that its putative status as a co-fiduciary of the ESOP has no bearing on its liability for monetary damages, as opposed to injunctive relief. Defendant further denies that it has admitted that it acted as plan administrator, and argues that the United States Court of Appeals has declined to recognize *de facto* plan administrators, requiring instead that a particular entity be a "designated" plan administrator in order to be liable under ERISA.

On November 3, 1994, Defendant Electro–Jet also filed a motion to dissolve the preliminary injunction previously granted in this matter. (Doc. 53). Defendant therein contended that as of November 1, 1994, Defendants Gerding and Weber had "fully complied with the preliminary injunction" to the best of their ability by filing annual reports with the IRS for fiscal years 1990–93, and by providing Plaintiffs with copies of those filings. (Doc. 53, p. 6).

On November 23, 1994, Plaintiffs filed their memorandum in opposition to Defendant Electro–Jet's motion to dissolve the preliminary injunction. (Doc. 56). Although Plaintiffs concede that Defendants filed and provided copies of putative annual report forms, Plaintiffs challenge Defendant's assertion that such documents represent "full compliance" with the terms of the preliminary injunction. Plaintiffs point out that Defendants admit that their filings lacked the requisite accountants' statements, and further argue that the figures relied upon in those documents to value the ESOP stock holdings previously were discredited by appraisals obtained by Defendant's own management. (Doc. 56, pp. 2–3). Plaintiffs therefore argue that the preliminary injunction should not be dissolved, as Defendant's allegedly incomplete and inaccurate annual reports do not constitute full compliance therewith.

In its reply filed on December 6, 1994, Defendant Electro–Jet argues that the annual reports it has filed "are as complete and as accurate as possible" under the circumstances. (Doc. 58, p. 2). Defendant asserts that the Court's preliminary injunction order required only that degree of compliance, not that the annual reports be flawless. As Defendant contends that more accurate and complete information is not available to it, due to problems beyond Defendant's power to control, it urges the Court to conclude that it has substantially complied with the preliminary injunction's terms, and that such injunction therefore should be dissolved.

## OPINION

### Standard of Review on Motions for Summary Judgment

■ The summary judgment procedure under Fed.R.Civ.P. 56 is designed to secure a just, speedy and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

■ The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)).

■ The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party. *Anderson* at 249, 106 S.Ct. at 2510–11 (citing *Cities Serv.,* 391 U.S. at 288–289, 88 S.Ct. at 1592–93). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967), or is not significantly probative, *Cities Serv.,* 391 U.S. at 290, 88 S.Ct. at 1593, judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

### Scope Of Penalty Available Pursuant To 29 U.S.C. § 1132(c)

■ The provisions of ERISA specifically require the administrator of a plan such as Electro–Jet's ESOP: 1) to file and to make available to plan participants and beneficiaries an annual report for each plan year, 29 U.S.C. §§ 1023; 1024(a)(1)(A), (b)(2)–(4); and 2) to provide certain information to any plan participant or beneficiary who requests such. 29 U.S.C. § 1025(a). Having made a qualifying request of Defendants, Plaintiffs claim in their complaint that they are entitled to a monetary penalty, as provided for by 29 U.S.C. § 1132(c), for Defendants' failure to comply. (Doc. 1, Count VI, ¶¶ 90–106).

The applicable penalty portion of ERISA provides as follows, in pertinent part:

> Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal ...

29 U.S.C. § 1132(c).

In moving for summary judgment as to that portion of Plaintiffs' complaint, Defendant Electro–Jet does not deny that Plaintiffs made appropriate requests to Defendants for information that ERISA requires plan administrators to furnish, or that Defendants failed to provide the requested information. Rather, Electro–Jet argues that both the obligation to furnish plan information and the penalty for failure to do so apply only to a plan administrator, and that because Electro–Jet was *not* the designated plan administrator, it is not subject to liability under 29 U.S.C. § 1132(c).

In support of that argument, Defendant Electro–Jet cites a corporate resolution dated December 31, 1987, in which Electro–Jet officially appointed an administrative committee consisting of Defendants Weber, Gerding and Hare to administer the Electro–Jet ESOP. (Doc. 45, p. 4; *see* Doc. 1, Ex. H). Defendant Electro–Jet asserts that such document is dispositive of the Electro–Jet ESOP administrator's identity.

In response, however, Plaintiffs contend that notwithstanding the appointment of an administrative committee, Defendant Electro–Jet, in ERISA-mandated documents (*see* 29 U.S.C. §§ 1022(a)(1), 1024(a)(1)(A)), held itself out as the ESOP plan administrator. For example, the [undated] Summary Plan Description provided to Electro–Jet ESOP participants stated as follows:

> The name, address and business telephone number of the Plan Administrator are:
>
> Electro–Jet Tool & Mfg. Co., Inc.
> 10400 Evendale Drive
> Cincinnati, Ohio 45241
> (513) 563–0800

(Doc. 48, Ex. 3). In addition, in the ERISA annual reports filed with the IRS for fiscal years 1988–1991, Electro–Jet identified itself as the "plan administrator." (Doc. 48, Ex. 4, §§ 1a, 2a).

Moreover, Plaintiffs argue that if those admissions are not sufficient to implicate Electro–Jet as the ESOP plan administrator, the subsequent resignations of each member appointed to the designated administrative committee are. Plaintiffs have provided the Court with copies of the resignations of Defendant Hare [dated October 26, 1993] and Defendants Gerding and Weber [dated September 1, 1994] as Electro–Jet ESOP administrators. (*See* Doc. 48, Exs. 5, 6). The Electro–Jet ESOP document itself provides as follows:

> The Employer, upon the resignation or removal of an Administrator, shall promptly designate in writing a successor to this position. If the Employer does not appoint an Administrator, the Employer will function as the Administrator.

(Doc. 48, Ex. 1, § 2.04). Additionally, ERISA provides that if no plan administrator is designated by the terms of the plan document, the plan sponsor shall act in that capacity. 29 U.S.C. § 1002(16)(A). Under either approach, Plaintiffs argue, Electro–Jet, which is both the employer and the plan sponsor, became the acting plan administrator and thus liable for monetary penalties available against a plan administrator.

Finally, Plaintiffs also assert that Defendant Electro–Jet is liable for injunctive relief due to its status as a co-fiduciary of the ESOP. 29 U.S.C. § 1105(a).

Defendant Electro–Jet counters Plaintiffs' final argument by reiterating that it has moved for summary judgment only as to the claim for a monetary penalty, not as to Plaintiffs' claims for injunctive relief. In addition, Defendant argues that *de facto* plan administrators are not recognized under the law applicable in this Circuit, where liability under 29 U.S.C. § 1132(c) is imposed against only designated plan administrators. However, other than stating that it planned to appoint a new trustee and plan administrator in the near future, Defendant failed to address Plaintiffs' argument regarding the resignation of all designated plan administrators. (*See* Doc. 50).

Defendant Electro–Jet relies heavily upon *Vanderklok v. Provident Life and Accident Ins. Co.*, 956 F.2d 610 (6th Cir.1992), a decision in which the Sixth Circuit Court of Appeals held that a company providing insurance under an employee benefit plan could not be held liable under 29 U.S.C. § 1132(c) for failure to supply information requested pursuant to ERISA, "because [the insurer] is not the designated plan administrator." *Id.* at 618. The facts in *Vanderklok*, however, contained no suggestion that the defendant insurance carrier had held itself out as the plan administrator, or that the plaintiff/plan beneficiary would have had any difficulty either ascertaining the identity of or contacting the designated administrator. Conversely, the facts presented to this Court in the present action suggest that Defendant Electro–Jet *did* hold itself out as the plan administrator in certain plan documents provided to plan beneficiaries such as Plaintiffs (*e.g.*, the

summary plan description). (*See* Doc. 48, Ex. 3). Moreover, the facts before this Court further suggest that Electro–Jet became the plan administrator, by operation of the terms of both the ESOP document and ERISA, following the resignation of the designated members of the ESOP administrative committee. (*See* Doc. 48, Ex. 1, § 2.04 and 29 U.S.C. § 1002(16)(A)). Accordingly, *Vanderklok* is inapposite.

The Court further observes that the record before it is somewhat unclear regarding whether and how much time elapsed between the resignations of Hare, Gerding and Weber and Defendant Electro–Jet's appointment of a new plan administrator. The information available to the Court suggests—and indeed, Defendant Electro–Jet concedes in its motion to dissolve preliminary injunction—that all three members of the administrative committee had resigned by September 1, 1994. (*See* Doc. 48, Exs. 5, 6; Doc. 53, pp. 3–4). The information available to the Court also suggests, however, that Defendant Electro–Jet did not appoint a replacement plan administrator until at least October 31, 1994. (*See* Doc. 50, p. 2 [containing Electro–Jet's representation that [o]n October 31, 1994, Electro–Jet *will* appoint a new ... plan administrator] and Doc. 53, p. 5 [containing Electro–Jet's representation that its directors appointed "Frank J. Gollings as administrator/trustee ... effective November 1, 1994"). Defendant Electro–Jet has identified no "plan administrator" who served during the two month time period between the September 1, 1994 resignations and the November 1, 1994 appointment, nor has it offered any rationale as to why Electro–Jet should not be regarded as the acting plan administrator for at least that time period.

The conflicting viewpoints advanced by the parties regarding Defendant Electro–Jet's status as plan administrator merely underscore the Court's conclusion that some genuine issues of material fact remain unresolved on this issue. For example, assuming that the Court concludes that Electro–Jet was the acting plan administrator for some discrete time period, Plaintiffs presumably still must establish that a *bona fide* ERISA request was delivered to Electro–Jet during that time period. Given, too, the discretionary

nature of the 29 U.S.C. § 1132 penalty, Plaintiffs would not necessarily be entitled to collect a penalty for Electro–Jet's limited period of non-compliance, particularly if other parties (*i.e.*, the prior administrative committee members) already were under a duty to produce the same documents. In light of these and other remaining questions, summary judgment is not appropriate.

### Appropriateness Of Dissolving Preliminary Injunction

In its second pending motion, Defendant Electro–Jet also asks the Court to dissolve the existing preliminary injunction, stating that it has "fully complied" with the terms of the Court's injunction order. As Plaintiffs' opposition to that motion makes clear, however, the issue of Defendant's "full compliance" again implicates serious questions of fact which preclude the Court from granting Defendant's request as a matter of law.

Notwithstanding Electro–Jet's representation that Magistrate Judge Sherman's report and recommendation contemplated only that Defendant comply to the best of its ability, not absolutely, and its further representation that the annual reports that it has filed and provided to Plaintiffs do constitute compliance to the best of its ability, Plaintiffs' seemingly reasonable objections to the concededly incomplete annual reports that Defendant has offered dissuade this Court from accepting Defendant's representations at face value.

Defendant's motion to dissolve preliminary injunction therefore is denied, without prejudice to Defendant's right to reintroduce such motion when it has achieved full compliance. Absent complete compliance, however, the question remains a factual one, to be addressed at a trial on the merits.

IT THEREFORE IS ORDERED that Defendant Electro–Jet's motions for summary judgment (Doc. 45) and to dissolve preliminary injunction (Doc. 53) hereby are DENIED.

IT IS SO ORDERED.